# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ETHAN GRIM,

     Petitioner,  :    Case No. 2:25-cv-00258

  - vs -         District Judge Edmund A. Sargus, Jr.
             Magistrate Judge Michael R. Merz

WARDEN, Belmont
 Correctional Institution,

        :
     Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus action brought *pro se* by Petitioner Ethan Grim to obtain relief from his conviction in the Logan County Court of Common Pleas (Petition, ECF No. 1).  The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 10), the Warden's Return of Writ (ECF No. 11), and Petitioner's Traverse (ECF No. 40).

**Litigation History**

The Third District Court of Appeals made the following findings on direct appeal:

> [*P2] On November 27th, 2019, four individuals conspired to steal from a drug dealer in Bellefontaine. Three of the four individuals unlawfully entered the drug dealer's residence while the fourth individual waited in the car outside. During the home invasion,

multiple residents were assaulted, and two residents were shot in the head and killed.

[*P3] One of the home-invaders, Elijah Barrett ("Barrett"), was shot in the leg during the incident and he was taken to a hospital in Urbana. Barrett ultimately confessed and named his three accomplices: Ethan Grim ("Grim"), Austin Allen ("Allen"), and Josia Bush ("Bush"). Allen, the driver who waited outside during the home invasion, also confessed to his role and implicated Grim, Bush, and Barrett as well.

[*P4] Grim was less than a month shy of his 18th birthday when the crimes were committed. Barrett and Bush were also juveniles but Allen, the driver, was an adult.

[*P5] A delinquency complaint was filed against Grim charging him with, inter alia, Complicity to Aggravated Burglary and Complicity to Murder. On December 30, 2019, the State filed a motion to relinquish jurisdiction over Grim seeking a discretionary bind over pursuant to R.C. 2152.12(B).

[*P6] Over objection from Grim, the juvenile court held a joint probable cause hearing for all three juveniles. The juvenile court ultimately determined that there was probable cause to believe that Grim and the two others committed the charged acts.

[*P7] On June 1, 2021, an amenability hearing was held on the State's motion to relinquish jurisdiction. After hearing the testimony presented and reviewing the submitted evaluation, the juvenile court determined that the factors in favor of transfer outweighed the factors against transfer, that Grim was not amenable to rehabilitation in the juvenile system, and that the safety of the community required that Grim be subject to adult sanctions. The juvenile court granted the State's motion to relinquish jurisdiction and bound Grim over to the Logan County Common Pleas Court. Prior to the hearing, a social history investigation and a forensic psychological evaluation of Grim were conducted.

*State v. Grim*, 2023-Ohio-4474, ¶¶ 2-7 (Ohio App. 7th Dist. Dec. 7, 2023).

On July 13, 2021, after the transfer of jurisdiction, Grim was indicted for Complicity to

Aggravated Burglary in violation of Ohio Revised Code § 2911.11(A)(1) and Ohio Revised Code

§ 2923.03 (Count 1), Complicity to Aggravated Robbery in violation of Ohio Revised Code §

2

2911.01(A)(3) and Ohio Revised Code § 2923.03 (Count 2), Complicity to Kidnapping in violation of Ohio Revised Code § 2905.01(A)(2) and Ohio Revised Code § 2923.02 (Count 3), two counts of Complicity to Felonious Assault in violation of Ohio Revised Code § 2903.11(A)(2) and Ohio Revised Code § 2923.03 (Counts 4 and 5), and two counts of Complicity to Murder in violation of Ohio Revised Code § 2903.02(B) and Ohio Revised Code § 2923.03 (Counts 6 and 7). All seven counts in the indictment contained three-year firearm specifications pursuant to Ohio Revised Code § 2941.145(A)(Indictment, State Court Record ECF No. 10, Ex. 28).

Grim pled not guilty and the case was tried to a jury in January 2023 which found Grim guilty on all counts and specifications. On January 25, 2023, Grim was sentenced to serve an aggregate, indefinite prison term of 50 years to life, with parole eligibility after 25 years. *Id.* at Ex. 42).

Represented by new counsel, Grim appealed to the Ohio Third District Court of Appeals, raising the following assignments of error:

> 1. Appellant's rights to due process under the state and federal constitutions were violated when the juvenile court denied appellant the ability to confront and cross-examine his accusers.
>
> 2. Appellant's convictions were not supported by the weight of the evidence.
>
> 3. The trial court abused its discretion in admitting hearsay evidence from a non-testifying codefendant.
>
> 4. The trial court abused its discretion in admitting an out-of-court statement to explain the conduct of an accomplice.
>
> 5. The trial court erred by crafting a sentence based on testimony from a codefendant's separate trial that was not in the record in this case.

(Appellant's Brief, State Court Record, ECF No. 10, Ex. 45, PageID 230-58). The Third District overruled all of these assignments of error and affirmed the conviction. *State v. Grim, supra.* More

3

than a year later, Grim appealed to the Ohio Supreme Court (Notice of Appeal, State Court Record, ECF No. 10, Ex. 48).  The Court denied leave to file a delayed appeal. *Id.* at Ex. 50.  Grim filed his Petition in this Court on March 17, 2025, pleading the following grounds for relief:

> **Ground One** Appellant's rights to due process under the federal constitution were violated when the juvenile court denied appellant the appellant the ability to confront and cross-examine his accuser, In violation of the Sixth and Fourteenth Amendment of the U.S. Constitution.
>
> **Supporting Facts**:  In this case the juvenile court held a joint probable cause hearing for all three juvenile codefendant Ethan Grim (petitioner), Elijah Barrett, Josia Bush. Grim filed a motion opposing the joint hearing, [No. 19-JD-119 1/30/20 motion] based on violations to the Confrontation Clause, for admitting a codefendant's testimonial confession incriminating the defendant. The motion was denied. The petitioner renewed continuing objections in regards to the statements of the codefendants and the juvenile court granted the continuing motion. [No. 19-JD-l19 7/15/20 motion]  (Tr. 227, 230, 244, 252, 254, 319, 321)
>
> 1. Throughout the hearing Detective Slayer repeatedly and pervasively testified about statements from codefendants, including the adult codefendants Austin Allen, and Barrett implicating the petitioner. (Tr. 227-228, 230) The prosecution played recordings of various statements given by Bush, Barrett, and Allen. (Tr. 244, 252, 254-255, 257) None of these codefendants testified. The hearsay evidence was the main evidence implicating the petitioner. Counsel should have had the opportunity to cross examine the witnesses who were available to testify instead of relying on hearsay evidence.
>
> The state appellate courts erroneously declined to apply the confrontation clause and the hearsay rules misconstruing the juvenile probable hearings by comparing those hearings to preliminary hearings, Grand jury proceedings in criminal courts. The state courts failed to identify any U. S, Supreme court decision that held confrontation rights do not apply in the juvenile bindover hearing. The State court(s) failed to recognize the procedural safeguards in the juvenile context are protected through the due process clause of the fourteenth amendment. The court essentially held that confrontation clause and the fairness that accompanies due process does not apply at the probable cause hearing for juveniles in regards to the Sixth Amendment Confrontation Clause Therefore,

4

the court has essentially found only part of the Sixth Amendment applies at the juvenile hearing.

2. The petitioner contends that a juvenile facing bindover to adult court with the attendant criminal penalties should at least have equivalent due process protections. The United States supreme court has recognized that the preliminary hearings are a critical stage in the trial proceeding, in which the Sixth and the Fourteenth amendments apply, and the opportunity for cross-examination afforded at a preliminary examination may satisfy the Confrontation Clause in at least some circumstances. Therefore, the confrontation clause can be applied at the preliminary stage and therefore applies in the juvenile preliminary hearings as well.

The Petitioner contends the state courts analogizing a juvenile bindover hearing to a preliminary hearing in a criminal case ignores that juvenile defendants have a liberty interest at bindover hearings that are far greater than an adult offender facing a preliminary hearing. An adult offender is merely facing a screening stage; The offender is already subject to the punitive adult criminal justice system and the prospect of a lengthy prison term merely by being charged. As compared to a juvenile at a bindover hearing who at risk of losing the benefits of the juvenile system with the focus on rehabilitation and limited confinement options. The Supreme Court of the United States has held that the bindover hearing is a 'critically important proceeding' and that the hearing 'must measure up to the essentials of due process and fair treatment.

The state courts ignored that the United States Supreme Court confirmed that a juvenile court must recognize a juvenile's due process rights and that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone. The Petitioner contends that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable
to juvenile delinquency proceedings."

**Ground Two:** The trial court abused its discretion in admitting hearsay evidence from a non-testifying Co-defendant in violation of his Sixth and Fourteenth amendment of the U.S. Constitution.

**Supporting Facts:** The Sixth Amendment of the U.S. Constitutions restricts the use of hearsay evidence used against criminal defendants. The state courts allowed for a jail nurse to testify that the petitioner's non-testifying codefendants shaved the residue off his arms. The Petitioner objected to state substituting the non-testifying codefendants with that of the Jail nurse. The court

5

overmled the hearsay objection on the grounds that it was made for a medical diagnosis. (Tr. 452-453).

The nurse has no personal knowledge as to why the petitioner shaved his arms. The nurse testimony allows for the jury to assume that Grim shaved his arms to remove residue. Regardless of if the evidence may not be used as truth of the matter, it was used in guised to imply gunshot residue was also removed my Grim because he shaved his arms. The nurse further contacted law enforcement and passed the information along. A detective testified at trial that Grim also had shaved arms when he was interviewed. The state's presentation of this testimony to the jury shows the materiality of the statement which a juror could use to determine guilt or innocence. The testimony was prejudicial and the confrontation clause was violated.

The court allowed the evidence for purposes of medical diagnosis, " thus fitting a hearsay exception. (*Id*. at 452) The court ignored that the statement it was not introduced at Grim's trial for a medical diagnosis of the petitioner and is wholly irrelevant and prejudicial. The Shaved arms was clearly introduced to sway the jury to believe because Grim shaved his arm is implying he was guilty.

**Ground Three** The trial court erred in admitting an out-of-court statement to explain the conduct of an accomplice in violation of his Sixth and Fourteenth amendment of the U.S. Constitution denying the petitioner a complete defense.

**Supporting Facts:** The Trial court over objection allowed codefendant Allen to testify to out-of-court statements made by Music of his phone call with Mr. Grim after the incident which allegedly indicated Grim should kill Allen. There is no evidence in the record that Music told Allen of the any conversation between him and Grim. Allen testified he assumed it was his brother. The court found that Music's Statements were not used as truth of the matter but were used to show why Allen did what he did in running away. (Tr. 532-533) Why Allen ran away was irrelevant to the state's case. The fact that Allen was not actually on the phone to hear what was actually said and if he overheard anything, that he could have misinterpreted what he overheard, and those words were never spoke.  This type of evidence should have been excluded it denied the petitioner his right to a complete defense.

The right to present a complete defense is abridged by evidence rules that 'infringe upon a weighty interest of the accused' and are "arbitrary" or "disproportionate to the purposes they are designed to

6

serve. The state used this hearsay evidence to pile more uncharged allegations on Grim implying that he was going to kill Allen, too. This is highly and unfairly prejudicial and directly connected to the charged offenses by suggesting a plan to kill an untrustworthy accomplice to cover up his involvement. A jury could have used this type of prejudicial testimony to determine guilt or innocence where it should not be weighed at all. The state posed this question where Allen's conduct in running away was not relevant to guilt on the charged offenses, was not equivocal, and did not need to be explained. It was prejudicial and outweighed by the danger of unfair prejudice and cannot connect the accuse[d] to the crime.

(Petition, ECF No. 1).

**Procedural Default**

Respondent asserts merits review of the Petition is barred by Petitioner's failure to timely appeal to the Supreme Court of Ohio from the decision of the Third District Court of Appeals. That court handed down its decision December 11, 2023. See *State v. Grim, supra.* Grim had forty-five days from that date to appeal to the Ohio Supreme Court under Sup. Ct. Prac. R. 6.01(A) or until January 25, 2024. Petitioner's Motion for Delayed Appeal was not filed until December 20, 2024 (Motion, State Court Record, ECF No. 10, Ex. 49). In seeking leave to file a delayed appeal, Grim claimed that his appellate attorneys had not told him he had lost in the Third District until about a week before January 25, 2024. *Id.* at PageID 1372. He characterized this as ineffective assistance of appellate counsel. In language which is copied virtually verbatim in his Traverse, he explains he could not afford to hire an attorney and therefore had to rely on inmate law clerks at his place of incarceration. *Id.* The Ohio Supreme Court summarily denied the Motion for delayed appeal. *Id.* at Ex. 50.

Ineffective assistance of appellate counsel can act as excusing cause for a procedural

7

default. Attorney error amounting to ineffective assistance of counsel can constitute cause to excuse a procedural default.  *Murray v. Carrier,* 477 U.S. 478, 488 (1985); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir. 1996).  However, *Murray v. Carrier* also holds that the exhaustion doctrine "generally requires that a claim of ineffective assistance of counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default in federal habeas proceedings." 477 U.S. at 489; *See also Ewing v. McMackin*, 799 F.2d 1143, 1149-50 (6th Cir. 1986). Attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which he was not constitutionally entitled to counsel, e.g., a discretionary appeal or state post-conviction proceeding.  *Coleman v. Thompson*, 501 U.S. 722 (1991).

The ineffective assistance claim cannot be presented as cause if it was itself procedurally defaulted in the state courts, unless one of the standard excuses for that procedural default exists, to wit, actual innocence or cause and prejudice.  *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007).  Ineffective assistance of counsel on appeal cannot constitute cause for failure to file a timely application for reopening of the direct appeal under Ohio R. App. P. 26(B) since a person is not entitled to counsel for the reopening. *Riggins v. Turner,* 110 F.3d 64 (6th Cir. 1997).

Ohio has a remedy for ineffective assistance of appellate counsel:  an application for reopening under Ohio R. App. P. 26(B).  That rule requires that the application be filed within ninety days of the relevant court of appeals decision.  However, the record reveals Petitioner never filed an App.R26(B) application.  He therefore cannot rely on a claim of ineffective assistance of appellate counsel to excuse his failure to timely appeal to the Ohio Supreme Court.

8

Petitioner next claims that "Due To Petitioner's Serious Mental Illnesses, As A Juvenile (Child Offender), He Was Unabfo [sic] To File Timely Appeal To The Ohio Supreme Court Without Aid Of Counsel." This claim evidences several of Petitioner's unsupported positions.

First of all, while Petitioner may have been a child when he committed the offenses for which he is imprisoned and was still under the jurisdiction of the juvenile court until the bindover order was entered, that court relinquished jurisdiction and Petitioner was tried and convicted as an adult. He was an adult at the time he should have appealed to the Ohio Supreme Court and during the time when he should have moved under Ohio App. R. 26(B) to litigate his claim of ineffective assistance of appellate counsel. Any presumption that, as a juvenile, he lacked the capacity to "understand . . . the legal process" disappeared when he became an adult.

Secondly, he asserts his "severe mental illness" excuses his default, relying on *Atta v. Scutt*, 662 F.3d 736 (6th Cir. 2011). In *Atta*, the Sixth Circuit held that a habeas petitioner was entitled to an evidentiary hearing on his claim that his mental incompetence entitled him to equitable tolling of the statute of limitations. However, the court required specific allegations of how the incompetence caused the failure to timely file and noted petitioner's documented long history of serious mental illness. Nothing of that sort appears in the record here. The trial record shows no suggestion that Petitioner was incompetent to stand trial nor was any mental illness issue raised on direct appeal.

Petitioner faults the undersigned's prior opinions on procedural default to be

> an unreasonable application of Supreme Court precedent because the Magistrate unreasonably refused to recognize and extend the legal principle that juveniles are fundamentally different from adults and should be treated differently during the application of the law. See, *Roper v. Simmons*, 543 U.S. 551, 569-70. 125 S. Ct.1183.161 L. Ed. 2d 1 (2005); *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011. 176 L. Ed. 2d 825 (2010). as modified (July 6, 2010); *Miller v. Alabama*, 567 U.S. 460. 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012);

9

*Montgomery v. Louisiana*, 577 U.S.190, 1365. Ct. 718, 193 L Ed.
2d 599 (2016)).

(Traverse, ECF No. 40, PageID 1871-72).

The premises of this argument is flawed.  The lower federal courts do not have authority under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), to **extend** principles announced by the Supreme Court.  Rather, the question before a habeas court is whether the State court decision in the case is contrary to or an unreasonable application of the holdings, not dicta, of relevant Supreme Court decisions. Petitioner himself recognizes this rule when he writes "Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court." (Traverse, ECF No. 40, PageID 1867, citing *Parker v. Matthews*, 567 U.S. 37 (2012); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005)).  The Supreme Court of the United States has never held that juveniles are presumed to be mentally incompetent or that that presumption carries forward to an adult court when a juvenile court has relinquished jurisdiction.

Petitioner's next argument against procedural default is "The Lower Court Has Not Identified Any Independent State Procedural Rule That Petitioner Has Failed to Follow on Discretionary Review." (Traverse, ECF No. 40, PageID 1873).  In asserting procedural default, Respondent relied on *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999).  Petitioner asserts that *O'Sullivan* is "a federally created judicial ruling[,] not an adequate and independent State procedural rule." *Id.* at 1874.

In *O'Sullivan* the Supreme Court held

> Because the exhaustion doctrine is designed to give the state courts
> a full and fair opportunity to resolve federal constitutional claims
> before those claims are presented to the federal courts, we conclude
> that state prisoners must give the state courts one full opportunity to
> resolve any constitutional issues by invoking one **complete** round

10

> of the State's established appellate review process. Here, Illinois' established, normal appellate review procedure is a two-tiered system. Comity, in these circumstances, dictates that Boerckel use the State's established appellate review procedures before he presents his claims to a federal court.
>
> Unlike the extraordinary procedures that we found unnecessary in *Brown v. Allen* and *Wilwording v. Swenson,* a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process. In the words of the statute, state prisoners have "the right ... to raise" their claims through a petition for discretionary review in the State's highest court. § 2254(c). Granted, as Boerckel contends, Brief for Respondent 16, he has no right to *review* in the Illinois Supreme Court, but he does have a "right ... to raise" his claims before that court. That is all § 2254(c) requires.

*Id.*. at 844.

In Illinois, as the Supreme Court makes clear, review by the state supreme court is completely discretionary. Nonetheless a habeas petitioner must seek to invoke that discretionary review in order to exhaust his claims. Petitioner argues Ohio is the same and Ohio Supreme Court review is also discretionary, but that would make *O'Sullivan* fully applicable to Petitioner's situation.

Petitioner next argues that any procedural default is excused by his actual innocence. Petitioner offers no new evidence of actual innocence of the sort deemed necessary under *Schlup v. Delo*, 513 U.S. 298 (1995), but instead purports to rely on evidence adduced in the juvenile court proceedings which is not before this Court. As noted above, Petitioner's trial counsel did not raise a question of competence to stand trial and no such issue was raised on direct appeal.

Petitioner now asserts he received ineffective assistance of trial counsel because his trial attorney did not explore a not guilty by reason of insanity plea. No such claim of ineffective assistance of trial counsel was raised on direct appeal. Because it would presumably depend on evidence *dehors* the record, such a claim could have been raised in a petition for post-conviction

11

relief under Ohio Revised Code § 2953.21, but no such petition has been filed and the time for doing so has expired.  The same is true of this claim he was denied his statutory right to a competency hearing in the adult court.

At about the mid-point of his Traverse, Petitioner inserts an argument that the adult court lacked subject matter jurisdiction over the "Charges Of Complicity to Aggravated Robbery; Complicity to Kidnapping, Complicity to Felonious Assault; and three-year firearm specifications attached to those offenses" (Traverse, ECF No. 40, PageID 1877).  It is unclear why this claim is made at this point in the proceedings.  Lack of subject matter jurisdiction is not a pleaded ground for relief and new grounds for relief cannot be added by including them in a traverse.  *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Nor would lack of subject matter jurisdiction in the Common Pleas Court excuse Petitioner's procedural default in failing to timely appeal to the Ohio Supreme Court.

**Merits Analysis**

At Page 14 of the Traverse, Petitioner turns to arguing the merits of his claims.

**Ground One:  Violation of Confrontation Clause**

In his First Ground for Relief, Petitioner argues he was denied his right to confront his accusers when the juvenile court allowed into evidence at the probable cause hearing statements by co-defendants implicating Grim in the offenses.

This claim was Petitioner's first assignment of error on direct appeal and the Third District

12

decided it as follows:

{¶10} In his first assignment of error, Grim argues that his Due Process rights, and his rights under the Confrontation Clause, were violated when one of the State's witnesses was permitted to testify regarding statements elicited from Grim's codefendants at the probable cause hearing in juvenile court.

**Standard of Review**

{¶11} Generally, the admission of evidence lies within the broad discretion of the trial court. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62. However, we conduct a de novo review of hearsay evidentiary rulings that implicate the confrontation clause. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97.

**Analysis**

{¶12} In determining the State's motion for discretionary bindover in this matter, the juvenile court held a joint probable cause hearing for Grim, Bush, and Barrett. At the hearing, the State presented the testimony of eight witnesses, one of whom was a detective with the Bellefontaine Police Department. The detective testified to statements made to him by Barrett and Allen that implicated Grim in the crimes.

{¶13} Objections were made to the detective relaying out-of-court statements made by Barrett and Allen. Attorneys for the juveniles argued that since Barrett and Allen were not testifying, the evidence was in violation of the Confrontation Clause. The State responded that in a probable cause hearing, rather than a trial, there were relaxed evidentiary standards and the Confrontation Clause did not apply. The trial court agreed and permitted the detective to testify regarding Barrett and Allen's statements to police.

{¶14} Grim now renews his argument on appeal, contending that the detective's testimony recounting statements made by Grim's codefendants was in violation of the Confrontation Clause. However, Grim does acknowledge in his brief that Ohio Appellate Districts have repeatedly declined to apply the Confrontation Clause and strict hearsay rules to juvenile probable cause hearings. The Twelfth District Court of Appeals recently addressed the issue as follows:

13

> The United States Supreme Court has explained that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). A juvenile transfer hearing "is not a trial as it does not 'find as a fact that the accused minor is guilty of the offense charged. It simply finds the existence of probable cause to so believe.' "

*State v. Garner*, 6th Dist. Lucas No. L-18-1269, 2020-Ohio-4939, ¶ 19, quoting *State v. Iacona*, 93 Ohio St.3d 83, 93 (2001).

> The United States Supreme Court "has repeatedly declined to require the use of adversarial procedures to make probable cause determinations." *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014). The federal courts have repeatedly held that the Sixth Amendment's Confrontation Clause does not apply to preliminary hearings.[4] Likewise, the Ohio Supreme Court has held that the constitutional right to confront one's accusers "relates to the *actual trial* for the commission of the offense and not to the preliminary examination * * *." (Emphasis added.) *Henderson v. Maxwell*, 176 Ohio St. 187, 188, 198 N.E.2d 456 (1964).

*State v. Fuell*, 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, ¶ 29-30, appeal allowed, 164 Ohio St.3d 1419, 2021-Ohio-2923, and appeal dismissed as improvidently allowed, 168 Ohio St.3d 631, 2022-Ohio-1607.

{¶15} Similar to the appellant in *Fuell*, Grim cannot cite a single Ohio case determining that the Confrontation Clause applies at juvenile transfer/probable cause hearings, or that a detective's "hearsay" testimony at a juvenile probable cause hearing creates a Due Process issue. *Id.* at ¶ 32. In fact, contrary to Grim's unsupported claim on appeal, other Ohio Appellate Courts have made similar findings to *Fuell*. *See In re B.w.*, 7th Dist. Mahoning No. 17 MA 0071, 2017-Ohio-9220, ¶ 48 (going so far as to state a juvenile court *erred by not considering incriminating statements made to a detective from another source in a juvenile bindover proceeding*); *State v. Powell*, 4th Dist. Gallia No. 20CA3, 2021-Ohio-200, ¶ 23; *State v. LaRosa*, 11th Dist. Trumbull No. 2018-T-0097, 2020-Ohio-160, ¶ 38-39; *State v. Garner*, 6th Dist. Lucas No. L-18-1269, 2020-Ohio-4939; *State v. Dell*, 5th Dist. Licking No. 2021CA00079, 2022-Ohio-2483.

14

> {¶16} After reviewing the applicable legal authority, we agree with the other Ohio Appellate Districts, and the statements from the Supreme Court of the United States, that confrontation is essentially a "trial right." As the probable cause hearing here did not constitute a trial, the Confrontation Clause does not warrant reversal. Similarly, we find no Due Process violation here because Grim was afforded all proper procedures in the juvenile proceedings pursuant to statute. Therefore, Grim's first assignment of error is overruled.

*State v. Grim,* 2023-Ohio-4474 (Ohio App. 3d Dist. Dec. 11, 2023).

Petitioner offers no authority to show that this decision is an objectively unreasonable application of the relevant Supreme Court precedent.  He argues that juveniles facing bindover to adult court have an important liberty interest in remaining in the juvenile system, but the Supreme Court has not made that the test for applying the Confrontation Clause.  Homeowners have important Fourth Amendment interests in the privacy of their homes, but the Supreme Court has never held that meant search warrants could be issued only on a probable cause finding tested by cross-examination.

Petitioner's First Ground for Relief is without merit.

**Manifest Weight of the Evidence**

In his Traverse, Petitioner interjects between his argument on Ground One and the argument on Ground Three, his claim that his conviction is against the manifest weight of the evidence (Traverse, ECF No. 40, PageID 1879-80).  No manifest weight claim is pleaded in the Petition.  If it were, it would be dismissable as stating a claim not cognizable in habeas corpus.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  It cannot be deemed added to the Petition either as a sufficiency of the evidence clam or as a manifest weight claim because amendments cannot be made in a traverse.  *Jalowiec, supra.*

**Ground Two:  Abuse of Discretion in Admitting Hearsay About Shaved Arm**

In his Second Ground for Relief, Petitioner asserts the trial court abused its discretion in admitting testimony by a nurse regarding a co-defendant's shaving of his arm after the offenses. Grim raised this as an assignment of error on direct appeal and the Third District decided it as follows:

> {¶43} In his third assignment of error, Grim argues that the trial court improperly admitted hearsay evidence at trial from a non-testifying codefendant.
>
> **Standard of Review**
>
> {¶44} As stated previously, a trial court's evidentiary rulings are generally reviewed under an abuse of discretion standard. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. An abuse of discretion is a decision by the trial court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).
>
> **Analysis**
>
> {¶45} On November 29, 2019, Bush and Grim were brought to JDC and a nurse conducted a medical evaluation of them. The nurse testified at trial that when she was putting the blood-pressure cuff on Bush's arm, she noticed that Bush had some "open nicks" on his arm. (Tr. at 452). The nurse asked Bush if he shaved his arms and Bush responded that he did because he was "shaving the residue off." (*Id.* at 453). The nurse contacted law enforcement and passed the information along. A detective testified at trial that Grim also had shaved arms when he was interviewed.
>
> {¶46} Grim's attorney objected to the statements of Bush "shaving the residue off" being brought in through the JDC nurse, and the trial court overruled the objection finding that the statement "was done for purposes of medical diagnosis," thus fitting a hearsay exception. (*Id.* at 452). Grim renews his argument on appeal, contending that

the trial court erred because removing "residue" was not reasonably pertinent to diagnosis or treatment under Evid.R. 803(4).

{¶47} The State counters by reasserting that the nurse was asking Bush about the cuts on his arms for purposes of medical diagnosis under Evid.R. 803(4). In addition, the State argues that the "shaved arms" issue does not go directly to the truth of the matter asserted.

{¶48} We note that we do not agree with the State's argument that the evidence does not go to the truth of the matter asserted as the shaved arms for purposes of removing "residue" constitutes circumstantial evidence to establish identity of the perpetrators. However, as the trial court indicated, there could be some medical purpose for asking a juvenile why he has cuts on his arms when conducting a medical evaluation, such as ensuring the cuts were not self-inflicted. Therefore the trial court's ruling that the hearsay exception for medical diagnosis was applicable was not unreasonable or arbitrary.

{¶49} Nevertheless, even if we determined that the testimony that went beyond Bush shaving his arms to his statement that he wanted to get the "residue off" was inadmissible hearsay, we still find that the remaining evidence overwhelmingly supports the convictions beyond a reasonable doubt, thus the error would be harmless because it is so inconsequential compared to the remaining compelling evidence. *See State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061 (setting forth harmless error parameters in situations where evidence was erroneously admitted). For these reasons, Grim's third assignment of error is overruled.

*State v. Grim, supra.*

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.);

17

*Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). Whether or not a state court trial judge has abused his or her discretion in admitting evidence is not a constitutiomnal question. In other words, abuse of discretion is not a denial of due process. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Petitioner's Second Ground for Relief fails on the merits.

**Ground Three:  Denial of Right to Present a Complete Defense**

In his Third Ground for Relief, Grim complains that the trial court's admission of testimony by a co-defendant about the content of a telephone conversation between that co-defendant and Grim denied Grim his right to present a complete defense.

Grim presented this claim as his Fourth Assignment of Error on direct appeal and the appellate court decided it as follows:

> ¶50} In his fourth assignment of error, Grim argues that the trial court improperly permitted Allen to testify regarding a phone conversation he overheard Grim having with Grim's older brother after Barrett had been dropped off at the hospital. Grim argues that the testimony constituted inadmissible hearsay, and that it was extremely prejudicial.
>
> **Analysis**
>
> {¶51} When Allen, the driver, was testifying on direct examination, the following exchange occurred:
>
> > Q. So you dropped [Barrett] off at the hospital. You didn't drive up to the emergency room doors, did you?
> > A. No.
> > Q. Where did you drop him off at?
> > A. Like I said, there's a side street behind Mercy Health, and so we pulled up to the stop sign, [Barrett] got out there.
> > Q. And he walked up to the hospital?
> > A. Yeah
> > Q. Okay. So then what happens? What – you and [Grim] and [Bush] are still in the car. What happens?

A. So, we take that stop sign, we turn right, and we come down and then we turn left and we get in some suburban neighborhood. I don't know where we're at. I don't know Urbana very well. [Grim's] on the phone with I'm going to assume it was his brother, it was Sway. He gets on the phone and his brother asked him, he said, do you trust him with a life sentence?

[DEFENSE COUNSEL]: Objection.

THE WITNESS: He said no.

THE COURT: Hang on one second.

[PROSECUTOR]: So, this doesn't go to the truth of the matter asserted, it just goes to show what happens in the next order of events here.

THE COURT: Okay. [Defense Counsel], do you have – do you want to add to that?

[DEFENSE COUNSEL]: Normally that's used when it's a police officer in an investigation. I don't think that applies to a lay witness.

THE COURT: I think it applies. Ladies and gentleman of the jury, again, what Mr. Allen tells you the person on the other end of the phone named Sway said is not being offered for the truth of the matter of what Sway said, it's being offered to show how Mr. Allen acted in a particular manner in response to that rather than prove the matter of proof of what the other person, Mr. Sway said. So you're not to consider the truth of the matter of what Mr. Sway said, just consider the testimony about this as to [the] effect it had on Mr. Allen. You may proceed, [prosecutor].

Q. So what did you overhear?

A. So, I overheard – the radio was off in the car and that car ran [sic] was a quiet car, so, [Grim's] on the phone with Sway and he said do you trust him with a life sentence. [Grim] said no. He [Sway] said then you know what to do.

Q. So what did you do?

A. Next opportunity I got, as soon as I pulled the car over, I put it in park and I jumped out and said I got to pee. So I go behind this fenced-in area, and I overheard [Grim] tell Bush You ready to do this? So I just took off.

(Tr. at 532-534).

{¶52} Grim contends that the trial court erred by permitting Allen to testify regarding what Allen overheard during Grim's phone conversation. He argues that Allen's conduct in running away was not relevant to the guilt on the charged offenses and it did not need to be explained. He argues that because the testimony suggested that

19

Grim would have potentially killed Allen, it was highly prejudicial hearsay and should have been excluded.

{¶53} Even if we assumed, without finding, that Grim was correct that the evidence should have been excluded, the trial court minimized any impact of the statements by providing an *immediate* limiting instruction, telling the jury that "Sway's" statements were only to be considered for purposes of why Allen got out of his vehicle. A jury is presumed to follow curative instructions. *State v. Garner*, 74 Ohio St.3d 49, 1995-Ohio-168.

¶54} Moreover, we emphasize that the most damning statement that occurred in the cited segment was categorically not hearsay, which was when Allen testified to Grim asking Bush if he was "ready to do this?" Evid.R. 801(D)(2). Any statement made by Grim's brother on the phone carries little impact if Grim does not make his own statement indicating that he may act on it.

{¶55} Finally, the erroneous admission of hearsay is subject to harmless error analysis. *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 64. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to determine whether substantial rights were affected, we must determine whether there was prejudice, whether the error was harmless beyond a reasonable doubt, and whether the remaining evidence provides overwhelming evidence of guilt. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 25-31.

{¶56} Here, we unequivocally find that any purported error was harmless beyond a reasonable doubt. Any prejudice was minimized by the trial court's instruction, and the remaining evidence provides overwhelming evidence of guilt. Furthermore, the direct and circumstantial evidence tying Grim to the crimes is overwhelming beyond a reasonable doubt establishing Grim's guilt. For these reasons, Grim's fourth assignment of error is overruled.

*State v. Grim. supra.*

Federal habeas courts do not sit to correct asserted error in trial court evidentiary rulings except in rare circumstances. Grim has not shown how the Third District's ruling here is somehow contrary to or an objectively unreasonable application of Supreme Court precedent. Indeed his Traverse cites no Supreme Court authority whatsoever (ECF No. 40, PageID 1881-82). His

20

pleading is couched in terms of abuse of discretion, but we do not review state court decisions on that basis.  *Sinistaj, supra.*

**Request for Evidentiary  Hearing**

Grim concludes his Traverse by requesting an evidentiary hearing on his claims that he is not guilty by reason of insanity and that is trial attorney was ineffective for not pursuing that defense.  An evidentiary hearing is precluded by *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

 February 9, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

21

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.